KLEMM, BLAIR, STERLING & JOHNSON
A PROFESSIONAL CORPORATION
1008 PACIFIC NEWS BUILDING
238 ARCHBISHOP F.C. FLORES STREET
HAGÅTÑA, GUAM 96910
TELEPHONE 477-7857

F I L E D
DISTRICT COURT OF GUAM
APR 1 5 2003
MARY L. M. MORAN
CLERK OF COURT

Attorneys for    *Plaintiff Chrome Hearts, Inc.*

③

## IN THE DISTRICT COURT OF GUAM

| | |
|---|---|
| CHROME HEARTS, INC., ) | CIVIL CASE NO. CV **03-000**12 |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | |
| OLD TOWN, INC., dba GALLOP USA INDIAN ) | |
| ART & JEWELRY, THE BLACK BOX, and ) | **MEMORANDUM IN SUPPORT OF** |
| HIDY; EUN SOON AN; MYONG KI AN; YEO ) | **PLAINTIFF'S *EX PARTE*** |
| HOE KOO; WOOHYUN CORPORATION, dba ) | **APPLICATION FOR:** |
| MAUI DIVERS JEWELRY CENTER OF ) | |
| GUAM; DAVID K. PAK; KYONG MI PAK; ) | **(1)   AN ORDER OF SEIZURE;** |
| WON KI PAK; GUAM PALM CORPORATION, ) | |
| dba HAWAIIAN SILVER; JOYEN RHEE; TAK ) | **(2)   A TEMPORARY** |
| KUN RHEE; YOUNG MI HWANG; P & J ) | **RESTRAINING ORDER;** |
| CORPORATION, dba ALOHA JEWELRY 3; ) | |
| JOUNG SOO SOH and  SON SIM dba SILVER ) | **(3)   AN ORDER TO SHOW** |
| DECO;  SUN HUI PAK dba NEW YORK ) | **CAUSE RE PRELIMINARY** |
| COLLECTION;  KUEN KYUNG NO dba THE ) | **INJUNCTION;** |
| BEAD LOVER'S; KYOUNG OK PARK dba ) | |
| I COLLECTION;  JUNG WOO NAM dba ALMA ) | **(4)   FOR AN ORDER FOR** |
| SHOP; BONG SUN AHN dba HAPPY HAPPY ) | **EXPEDITED DISCOVERY;** |
| GIFT SHOP; AESTHETIC APPAREL ) | |
| CORPORATION; WAI WAH CHAN; MAN ) | **(5)   ORDER PRESERVING** |
| LAM YAM; MAN YIN YAM; MI JA KIM ) | **EVIDENCE; AND** |
| dba ACCESSORY WORLD; SPAIN ) | |
| CORPORATION, dba DISCOUNT SHOP; ) | **(6)   AN ORDER SEALING FILE** |
| HYUG CHANG KWON; MI OK PARK; MI EUN ) | **PENDING HEARING ON** |
| PARK; and, JOHN DOES 1 THROUGH 30, ) | **ORDER TO SHOW CASE** |
| ) | |
| Defendants. ) | |

**ORIGINAL**

# TABLE OF CONTENTS

PAGE

TABLE OF AUTHORITIES ............................................................................................................iii

I.     INTRODUCTION ................................................................................................................2

II.    STATEMENT OF FACTS ...................................................................................................3

       A.   CHROME HEARTS' FAMILY OF CHROME HEARTS TRADEMARKS, LOGOS AND
            DESIGNS ......................................................................................................................3

       B.   THE CHROME HEARTS MARKS ...............................................................................5

       C.   DEFENDANTS' INFRINGING USE OF THE CHROME HEARTS MARKS ....................7

       D.   DEFENDANTS' SALE OF COUNTERFEIT CHROME HEARTS PRODUCTS ...................9

III.   ARGUMENT ......................................................................................................................20

       A.   EX PARTE SEIZURE ORDER ...................................................................................20

            1.   EX PARTE SEIZURE ORDERS ARE TYPICALLY ISSUED TO STOP THE
                 TRAFFICKING IN COUNTERFEIT GOODS ....................................................20

            2.   CHROME HEARTS HAS SATISFIED THE REQUIREMENTS FOR AN EX PARTE
                 SEIZURE ORDER PURSUANT TO THE TRADEMARK COUNTERFEITING ACT,
                 15 U.S.C. § 1116 ..........................................................................................21

            3.   PLAINTIFF IS LIKELY TO SUCCEED IN SHOWING THAT DEFENDANTS HAVE
                 SOLD COUNTERFEIT CHROME HEARTS JEWELRY AND ACCESSORIES ...................22

            4.   PLAINTIFF WILL SUFFER IMMEDIATE AND IRREPARABLE INJURY IF
                 SEIZURE IS NOT ORDERED ..........................................................................23

            5.   DEFENDANTS WILL LIKELY DESTROY, MOVE, HIDE OR OTHERWISE MAKE
                 INACCESSIBLE THEIR COUNTERFEIT PRODUCTS AND RELATED
                 DOCUMENTS IF CHROME HEARTS WERE TO PROCEED ON NOTICE TO
                 DEFENDANTS ...............................................................................................24

            6.   AN ORDER OTHER THAN AN EX PARTE SEIZURE ORDER IS NOT ADEQUATE
                 IN THIS CASE ...............................................................................................26

            7.   DEFENDANTS' COUNTERFEIT PRODUCTS WILL BE SEIZED IN THE AREAS
                 IDENTIFIED IN PLAINTIFF'S EX PARTE APPLICATION. ..................................27

            8.   PLAINTIFF HAS NOT PUBLICIZED THE PRESENT APPLICATION FOR SEIZURE .......27

            9.   PLAINTIFF HAS NOTIFIED THE U.S. ATTORNEY AS TO THE REQUESTED
                 SEIZURE AND IS PREPARED TO POST AN ADEQUATE BOND IN THIS CASE ............27

            10.  PLAINTIFF IS ALSO ENTITLED TO AN EX PARTE TEMPORARY RESTRAINING
                 ORDER AND AN ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION ............28

            11.  PLAINTIFF IS ENTITLED TO EXPEDITED DISCOVERY AND AN ORDER
                 PRESERVING EVIDENCE ...............................................................................30

            12.  GOOD CAUSE EXISTS FOR SEALING THE FILE PENDING HEARING ON THE
                 ORDER TO SHOW CAUSE ..............................................................................32

KLEMM, BLAIR,
STERLING & JOHNSON
A PROFESSIONAL CORPORATION
1008 PACIFIC NEWS BLDG
238 ARCHBISHOP
F.C. FLORES ST.
HAGÅTÑA, GUAM 96910
TELEPHONE 477-7857

IV.  CONCLUSION ............................................................................................................. 33

KLEMM, BLAIR,
STERLING & JOHNSON
A Professional Corporation
1008 PACIFIC NEWS BLDG
236 ARCHBISHOP
F.C. FLORES ST.
HAGÅTÑA, GUAM 96910
Telephone 477-7857

- ii -

# TABLE OF AUTHORITIES

**CASES**

Am. Can Co. v. Mansukhani, 742 F. 2d 314, 321-2 (7th
 Cir. 1984) ........................................... 28, 29

Apple Computer, Inc. v. Formula Int'l Inc., 725 F.2d
 521, 526 (9th Cir. 1984) ................................. 24

Dogloo, Inc. v. Doskocil Mfg. Co., Inc., 893 F. Supp.
 911, 917 (C.D. Cal. 1995) ................................ 28

Fimab-Finanziaria Maglificio Biellese Fratelli Fila
 S.P.A. v. Helio Import/Export, 601 F. Supp. 1, 2 (S.
 D. Fla. 1983) ....................................... 20, 30

First Technology Safety Sys., Inc. v. Depinet, 11 F3d
 641 (6th Cir. 1993) ...................................... 25

Granny Goose Foods, Inc. v. Teamsters, 415 U.S. 423,
 438-39 (1974) ........................................... 28

Home Box Office, Inc. v. Showtime/The Movie Channel
 Inc., 832 F.2d 1311, 1314 (2d Cir. 1987) ................. 23

Hunting World Inc. v. Reboans Inc., 24 U.S.P.Q.2d 1844,
 1845-7 (N.D. Cal. 1992) .............................. 21, 30

In re Circuit Breaker Litig., 1997 WL 580570 at *2
 (C.D. Cal. 1997) ................................. 21, 28, 30

In re Vuitton et Fils S.A., 606 F.2d 1, 4-5 (2d Cir.
 1979) ........................................ 21, 25, 28, 29

Joy Mfg. Co. v. CGM Valve & Gauge Co., Inc., 730 F.
 Supp. 1387, 1394 (S.D. Tex. 1989) ........................ 24

Ocean Garden, Inc. v. Marktrade Co., Inc., 953 F.2d
 500, 506 (9th Cir. 1991) ................................. 28

Paisa Inc. v. N & G Auto, Inc., 928 F. Supp. 1004, 1007
 (C. D. Cal. 1996) ....................................... 28

Paramount Pictures Corp. v. Doe, 821 F.Supp. 82, 91
 (E.D.N.Y. 1993) ......................................... 33

Power Test Petroleum Distrib. v. Calcu Gas, Inc., 754
 F.2d 91, 95 (2d Cir. 1985) ............................... 24

Reebok Int'l Ltd. v. Marnatech Enters., Inc., 737 F.
 Supp. 1521 (S.D. Cal. 1989), aff'd, 970 F.2d 552 (9th
 Cir. 1992) .............................................. 25

Sega Enters. Ltd. v. Accolade, Inc., 785 F. Supp. 1392,
 1401 (N.D. Cal. 1992) .................................... 31

Sega Enters. Ltd. v. MAPHIA, 857 F. Supp. 679, 689
 (N.D. Cal. 1994) ........................................ 28

Sega Enters. Ltd. v. MAPHIA, 948 F. Supp. 923, 927
 (N.D. Cal. 1996) ........................................ 21

Soler v. G&U, Inc., 86 F.R.D. 524 (S.D.N.Y. 1980) ............. 32

Twentieth Century Fox Film Corp. v. Mow Trading Corp.,
 749 F. Supp. 473, 475 (S.D.N.Y. 1990) ................. 30, 31

Vuitton v. White, 945 F.2d 569, 576 (3d Cir. 1991) ......... 23, 24

KLEMM, BLAIR,
STERLING & JOHNSON
A PROFESSIONAL CORPORATION
1008 PACIFIC NEWS BLDG
238 ARCHBISHOP
F.C. FLORES ST.
HAGÁTÑA, GUAM 96910
TELEPHONE 477-7857

- iii -

**FEDERAL STATUTES**

15 U.S.C. § 1116 ........................................ 20, 25, 29
15 U.S.C. § 1116 (d)(10)(B) ................................... 30
15 U.S.C. § 1116 (d)(2) .................................. 22, 27
15 U.S.C. § 1116(d)(4) ....................................... 22
15 U.S.C. § 1116(d)(4)(A) ................................ 22, 27
Fed.R.Civ.P. 65 .............................................. 28

**OTHERS**

19 Fed. Proc., L. Ed. § 47:70 (1983) .......................... 28
3 J. McCarthy, Trademarks and Unfair Competition,
  §25.10 at 25-15 (4th ed. 1996) ............................. 29
William W. Schwarzer, A. Wallace Tashima & James M.
  Wagstaffe, Calif. Prac. Guide § 13.43 (1995) ............... 28

KLEMM, BLAIR,
ERLING & JOHNSON
A PROFESSIONAL CORPORATION
OOB PACIFIC NEWS BLDG
238 ARCHBISHOP
F.C. FLORES ST.
HAGÅTÑA, GUAM 96910
TELEPHONE 477-7857

Case 1:03-cv-00012     Document 3     Filed 04/15/2003     Page 5 of 37

# I. INTRODUCTION

Over the past several years a counterfeiting industry has developed in the United States and in this region in connection with the sale of counterfeit jewelry. Plaintiff, Chrome Hearts, Inc., of Los Angeles, California ("Chrome Hearts"), has expended significant resources to investigate and stop this counterfeiting around the world in order to prevent the public from being deceived and to protect Chrome Hearts' reputation for high quality products, as symbolized by its well-known trademarks and copyrights.

This counterfeiting irreparably injures the public and Plaintiff. Among other things, consumers believe that they are purchasing authorized Chrome Hearts products when in fact they are buying substandard counterfeit products. When these counterfeit products break, turn color or do not wear well, consumers question the quality of Chrome Hearts' products. Furthermore, these counterfeit products dilute the value of Chrome Hearts' trademarks and rob Chrome Hearts of the value it has invested in its name and good will.

Events have revealed that several retail establishments doing business in Guam, have been selling and offering to sell counterfeit Chrome Hearts jewelry and accessories. Chrome Hearts seeks this Court's assistance to stop the continued deception of

KLEMM, BLAIR,
STERLING & JOHNSON
A PROFESSIONAL CORPORATION
1008 PACIFIC NEWS BLDG
238 ARCHBISHOP
F.C. FLORES ST
HAGÅTÑA, GUAM 96910

the public and the irreparable injury to Chrome Hearts caused by Defendants' illegal activities.

Plaintiff has received and investigated reports concerning Defendants' continued counterfeiting over the past several months. Plaintiff has collected evidence showing that the Defendants are selling numerous counterfeit products out of their stores on Guam. Plaintiff now presents this evidence to this Court and applies Ex Parte for an order pursuant to the provisions of the Lanham Trademark Act allowing Plaintiff to seize Defendant's counterfeit products, the records relating to the trafficking of such counterfeit products and other evidence of infringement from Defendants.

## II.    STATEMENT OF FACTS

### A.    CHROME HEARTS' FAMILY OF CHROME HEARTS TRADEMARKS, LOGOS AND DESIGNS

Plaintiff Chrome Hearts commenced business operations in Los Angeles in 1989, building up a domestic company that now is responsible for the employment of over 300 people around the world. Chrome Hearts sells a wide variety of quality handcrafted artistic products, including leather pants, leather jackets, leather vests, sterling silver, gold and platinum jewelry, including necklaces, bracelets, rings and wallet chains, cigarette lighters and belt buckles, bags, home furnishings, furniture uniquely made of oak and ebony and a wide collection of other products. Since the commencement of its business over a

KLEMM, BLAIR,
STERLING & JOHNSON
A PROFESSIONAL CORPORATION
1008 PACIFIC NEWS BLDG
238 ARCHBISHOP
F.C. FLORES ST.
HAGÅTÑA, GUAM 96910
TELEPHONE 477-7857

3

decade ago, Plaintiff Chrome Hearts has been continuously promoting and selling its line of diverse products under its family of famous CHROME HEARTS marks (hereinafter "CHROME HEARTS Marks"). In fact, Chrome Hearts has made extensive, international use in commerce of its CHROME HEARTS Marks, has expended and continues to spend large sums of money each year in promoting these marks and the goods and services associated therewith, and has received worldwide publicity with respect to its business operations and brand names.

Chrome Hearts has pioneered the idea of combining the look of rugged looking apparel and jewelry with fashion attire to make a uniquely-styled line of fashion apparel and accessories. All of Chrome Hearts' leather products are adorned with custom-made sterling silver hardware, including all of the buttons, snaps and ornamental pieces. Chrome Hearts further pioneered the look of suede inlay designs in connection with leather clothing. Once thought of as only a look for outlaw motorcyclists, Chrome Hearts has created a fashion niche that is now coveted in the upper most fashion circles.

Chrome Hearts has achieved a prominent position in the fashion industry, attributable to the high quality of its products sold under its CHROME HEARTS Marks and in 1993, it was presented with an unsolicited award in New York City as designer of the year for its innovated accessories and jewelry designs by the

KLEMM, BLAIR,
STERLING & JOHNSON
A PROFESSIONAL CORPORATION
1006 PACIFIC NEWS BLDG
238 ARCHBISHOP
F.C. FLORES ST.
HAGÅTÑA, GUAM 96910
TELEPHONE 477-7857

Council of Fashion Designers of America. Entertainers, such as Cher, Billy Idol, Aerosmith, Lenny Kravitz, Guns N' Roses, Seal, Madonna, Keith Richards, Danny Glover, Sting, Gloria Estefan, Christy Turlington, Naomi Cambell and Sharon Stone can all be seen in Chrome Hearts' fashions. Chrome Hearts products are sold in only the most prestigious stores, such as the Chrome Hearts-named boutiques in New York, Los Angeles, Tokyo and Osaka and in Maxfield of Los Angeles, Browns of London and the United Arrows and Intellectual Galleries boutiques in Japan.

All Chrome Hearts products are hand made in Los Angeles by Chrome Hearts' craftsmen. The level of expert workmanship exercised by these individuals is superior and conforms with the strict standards established by Chrome Hearts. Works designed by Chrome Hearts have been praised and recognized in numerous articles appearing in both trade publications and publications directed to the general public around the world, including articles in the United States, Germany, the United Kingdom, Japan and France. These articles have acclaimed the high artistry, fashion and style of Chrome Hearts' designs and the uniqueness of the designs.

**B.      THE CHROME HEARTS MARKS**

Plaintiff Chrome Hearts is the owner of numerous trademark registrations around the world in many international classes. In the United States, Chrome Hearts registrations include, but not

KLEMM, BLAIR,
STERLING & JOHNSON
A PROFESSIONAL CORPORATION
1008 PACIFIC NEWS BLDG
238 ARCHBISHOP
F.C. FLORES ST.
HAGÅTÑA, GUAM 96910
TELEPHONE 477-7857

5

limited to, U.S. Registration No. 1,665,791 for the CHROME HEARTS® mark in International Classes 14, 18, 25 and 26; U.S. Registration No. 2,216,570 for the CHROME HEARTS plus the Scroll Design® mark in International Class 14; U.S. Registration No. 2,216,575 for the CHROME HEARTS plus the Horseshoe Design® mark in International Class 25; U.S. Registration No. 2,118,026 for the CHROME HEARTS plus the Scroll Design® mark in International Classes 18 and 25; U.S. Registration No. 2,214,642 for the CHROME HEARTS plus the Dagger Design® mark in International Class 18 and U.S. Registration No. 2,214,641 for the CHROME HEARTS plus the Dagger Design® mark in International Class 25. Chrome Hearts is entitled to the exclusive use and benefit of all of its Registrations. Copies of some of these Registrations are annexed to the Complaint as Exhibit 1.

Each of the CHROME HEARTS Marks has been continually used in commerce since its respective date of first use.

As a result of Chrome Hearts' extensive use of the CHROME HEARTS Marks, Chrome Hearts has built up significant goodwill therein. The success of Chrome Hearts' marketing efforts is evidenced by, among other things, the wide distribution of CHROME HEARTS products and the unsolicited media attention that CHROME HEARTS-branded products receive. Further, Chrome Hearts' exacting standards, its vigorous promotion of its trademarks and the publicity generated for the CHROME HEARTS Marks by the

KLEMM, BLAIR,
STERLING & JOHNSON
A PROFESSIONAL CORPORATION
1008 PACIFIC NEWS BLDG
238 ARCHBISHOP
F.C. FLORES ST.
HAGÅTÑA, GUAM 96910

6

celebrities who prominently wear Chrome Hearts' products, have resulted in Chrome Hearts' clothing, jewelry and other fashion accessories becoming synonymous with high quality and styled products in the eyes of the consuming public.

By virtue of the wide renown acquired by the CHROME HEARTS Marks coupled with their wide geographic distribution and extensive sales of products under the CHROME HEARTS Marks, the CHROME HEARTS Marks have acquired secondary meaning in the minds of the purchasing public and have become famous.

### C. DEFENDANTS' INFRINGING USE OF THE CHROME HEARTS MARKS

This lawsuit concerns infringements upon Chrome Hearts' trademarks by each of the Defendants. Each Defendant, with one product or more, violated Chrome Hearts' rights in and to one or more of its trademarks. As a result of an investigation conducted by Chrome Hearts' investigators and counsel, Chrome Hearts has learned the following:

- Certain Defendants are selling, distributing, advertising and promoting jewelry bearing a reproduction of the CHROME HEARTS plus the Scroll Design® trademark. Copies of Defendants' merchandise bearing the reproduction of the CHROME HEARTS plus the Scroll Design® trademark are attached to the supporting Declarations submitted herewith.

- Certain Defendants are selling, distributing, advertising and promoting jewelry bearing a reproduction of

KLEMM, BLAIR,
STERLING & JOHNSON
A Professional Corporation
1008 PACIFIC NEWS BLDG
238 ARCHBISHOP
F.C. FLORES ST.
HAGÅTÑA, GUAM 96910

the CHROME HEARTS plus the Horseshoe Design® trademark.
Copies of Defendants' merchandise bearing the reproduction
of the CHROME HEARTS plus the Horseshoe Design® trademark are
attached to the supporting Declarations submitted herewith.

- Certain Defendants are selling, distributing,
advertising and promoting jewelry bearing a reproduction of
the CHROME HEARTS® trademark. Copies of Defendants'
merchandise bearing the reproduction of the CHROME HEARTS®
trademark are attached to the supporting Declarations
submitted herewith.

- Certain Defendants are selling, distributing,
advertising and promoting jewelry bearing a reproduction of
the CHROME HEARTS plus the Dagger Design® trademark. Copies
of Defendants' merchandise bearing the reproduction of the
CHROME HEARTS plus the Dagger Design® trademark are attached
to the supporting Declarations submitted herewith. (See,
Declarations of Latifi, Hall and Tucker.)

Defendants' CHROME HEARTS, CHROME HEARTS plus Scroll Design,
CHROME HEARTS plus Horseshoe Design and CHROME HEARTS plus the
Dagger Design marks are deceptively and confusingly identical to
Plaintiff's CHROME HEARTS Marks.

Defendants have used and are presently using the above-
referenced marks on their jewelry and other accessories. Such
use is likely to confuse consumers into thinking that Defendants'

KLEMM, BLAIR,
STERLING & JOHNSON
A PROFESSIONAL CORPORATION
1008 PACIFIC NEWS BLDG
238 ARCHBISHOP
F.C. FLORES ST.
HAGÁTÑA, GUAM 96910

goods emanate from or are associated with Plaintiff's CHROME HEARTS® products produced and distributed by Plaintiff under the CHROME HEARTS Marks.

**D.    DEFENDANTS' SALE OF COUNTERFEIT CHROME HEARTS PRODUCTS**

On October 4, 2002, Afschineh Latifi ("Ms. Latifi") of the law firm of Tucker & Latifi, LLP, visited Aesthetic Apparel located at the Japan Plaza Square inside the JR Superstore, in Tumon. Ms. Latifi observed what she determined to be counterfeit Chrome Hearts products at Aesthetic Apparel. These products included approximately 25 units of Chrome Hearts branded jewelry and accessories, including rings, belt buckles and lighters. (Latifi Decl. ¶¶4,5.)

Ms. Latifi purchased one ring bearing the Chrome Hearts trademark and Plaintiff's copyrighted dagger design from Aesthetic Apparel. (Latifi Decl. ¶5.) The ring was later identified to be a counterfeit Chrome Hearts branded ring by Robert Tucker (hereinafter "Mr. Tucker"). (Tucker Decl. ¶12.)

Also on October 4, 2002, Ms. Latifi visited the Black Box located on the ground floor of the Micronesia Mall and observed what she determined to be counterfeit Chrome Hearts products. Ms. Latifi noticed an awning above the store doorway identifying the store as "Chrome Hearts". Ms. Latifi recognized approximately 80 pieces of counterfeit Chrome Hearts jewelry including rings, pendants and bracelets. She purchased a pendant

KLEMM, BLAIR,
STERLING & JOHNSON
A PROFESSIONAL CORPORATION
1008 PACIFIC NEWS BLDG
238 ARCHBISHOP
F.C. FLORES ST.
HAGÅTÑA, GUAM 96910
TELEPHONE 477-7857

9

bearing the Chrome Hearts trademark and Plaintiff's copyrighted dagger design from the Black Box, which was placed in a shopping bag bearing the Chrome Hearts mark. (Latifi Decl. ¶¶4,6.) The pendant was later identified to be a counterfeit Chrome Hearts branded pendant by Mr. Tucker. (Tucker Decl. ¶12.)

On October 5, 2002, Ms. Latifi visited I Collection on the second level of the Micronesia Mall and observed what she determined to be counterfeit Chrome Hearts products. These products included approximately 20 units of Chrome Hearts branded jewelry. Ms. Latifi purchased a ring bearing Plaintiff's Chrome Hearts trademark and its copyrighted heart design. Her purchase was placed in a suede pouch bearing the Chrome Hearts mark. (Latifi Decl. ¶¶4, 7.) The ring was examined and identified to be a counterfeit Chrome Hearts ring by Mr. Tucker. (Tucker Decl. ¶12.)

On that same day, Ms. Latifi visited The Bead Lover's located on the first level of the Micronesia Mall, and observed approximately 50 pieces of counterfeit Chrome Hearts jewelry, including rings, earrings, pendants and bracelets. Ms. Latifi purchased a ring bearing Plaintiff's Chrome Hearts trademark and its copyrighted keeper design from The Bead Lover's. (Latifi Decl. ¶¶4,8.) The ring has been identified to be a counterfeit Chrome Hearts branded ring by Mr. Tucker. (Tucker Decl. ¶12.)

KLEMM, BLAIR,
STERLING & JOHNSON
A PROFESSIONAL CORPORATION
1008 PACIFIC NEWS BLDG
238 ARCHBISHOP
F.C. FLORES ST.
HAGÅTÑA, GUAM 96910

10

Also on October 5, 2002, Ms. Latifi visited Alma Silver Collection located in Tumon Marketplace, Tumon, Guam, and observed what she determined to be counterfeit Chrome Hearts products. The products included three full counters of counterfeit Chrome Hearts jewelry, including rings, earrings, bracelets, necklaces and some leather apparel, including two leather vests bearing counterfeit Chrome Hearts buttons. Ms. Latifi purchased a pendant bearing the Chrome Hearts mark and Plaintiff's star design. (Latifi Decl. ¶9.) The pendant has been identified as a counterfeit Chrome Heart branded pendant by Mr. Tucker. (Tucker Decl. ¶11.). While visiting the Alma Silver Collection, Ms. Latifi noticed a Chrome Hearts plus Horseshoe sticker on the store window, implying that Alma was an authorized Chrome Hearts store or somehow affiliated with Plaintiff. (Latifi Decl. ¶9.)

On October 6, 2002, Ms. Latifi visited the Hawaiian Silver Store located at The Plaza in Tumon, Guam and observed a wide array of counterfeit Chrome Hearts products including jewelry, bags, belts, watch cases, apparel and teddy bears for sale. Ms. Latifi estimates that Hawaiian Silver had at least 200 pieces of counterfeit Chrome Hearts jewelry, two shoulder bags, five lighters, several belts and one teddy bear. While at Hawaiian Silver, Ms. Latifi purchased a ring bearing the Chrome Hearts mark and Plaintiff's copyrighted dagger design. (Latifi Decl.

KLEMM, BLAIR,
STERLING & JOHNSON
A PROFESSIONAL CORPORATION
1008 PACIFIC NEWS BLDG
238 ARCHBISHOP
F.C. FLORES ST.
HAGÅTÑA, GUAM 96910
TELEPHONE 477-7857

11

¶10.) The ring has been identified as a counterfeit Chrome Hearts branded ring by Mr. Tucker. (Tucker Decl. ¶11.) Hawaiian Silver had a Chrome Hearts sign on its window giving the false impression to customers that it was an authorized dealer of Chrome Hearts products or somehow affiliated with Plaintiff. (Latifi Decl. ¶10.)

On that same day, Ms. Latifi visited the Happy Happy Gift Shop located in Tumon, across from the Outrigger Hotel and observed several showcases of counterfeit Chrome Hearts jewelry totaling approximately 100 pieces. In addition to its store awning, Happy Happy Gift Shop displayed two Chrome Hearts signs in the front window of its store, giving the false impression to customers that it was an authorized dealer of Chrome Hearts products or somehow affiliated with Plaintiff. While at the Happy Happy Gift Shop, Ms. Latifi purchased a bracelet bearing the Chrome Hearts mark and Plaintiff's copyrighted dagger design. (Latifi Decl. ¶11.) The bracelet has been identified as a counterfeit Chrome Hearts branded bracelet by Mr. Tucker. (Tucker Decl. ¶11.) Additionally, Happy Happy Gift Shop offered counterfeit Chrome Hearts tee shirts for sale. (Latifi Decl. ¶11.)

On October 6, 2002, Ms. Latifi visited the New York Collection in the Park Arcade Building in Tumon, Guam and observed at least 80 pieces of counterfeit Chrome Hearts jewelry

KLEMM, BLAIR,
STERLING & JOHNSON
A PROFESSIONAL CORPORATION
1008 PACIFIC NEWS BLDG
238 ARCHBISHOP
F.C. FLORES ST.
HAGÅTÑA, GUAM 96910
TELEPHONE 477-7857

12

and several tee shirts bearing counterfeits of Plaintiff's Chrome Hearts trademark. Ms. Latifi purchased a pendant bearing the Chrome Hearts trademark and Plaintiff's cemetery design, which was placed in a suede pouch bearing the Chrome Hearts trademark. (Latifi Decl. ¶12.) The pendant was identified as a counterfeit Chrome Hearts pendant by Mr. Tucker. (Tucker Decl. ¶12.) New York Collection displayed a Chrome Hearts sign on the outside as well as several signs inside the store, along with a photograph of Richard Stark, the principal at Plaintiff Chrome Hearts, giving the false impression to customers that it was somehow affiliated with Plaintiff. (Latifi Decl. ¶12.)

On October 4, 2002, Plaintiff's investigator, Greg Hall ("Mr. Hall") visited Gallop USA Indian Art Indian Art & Jewelry on the second floor of the Micronesia Mall and observed approximately 75 pieces of counterfeit Chrome Hearts branded products. Mr. Hall purchased a Chrome Hearts "machine made" ring for approximately $125 which was placed in a pouch with a Chrome Hearts logo. (Hall Decl. ¶3.) The ring was examined by Mr. Tucker who determined it to be counterfeit. (Tucker Decl. ¶11.)

Also on October 4, 2002, Mr. Hall visited Maui Jewelry at the Guam Premium Outlet Mall next to the Vitamin World store and observed over 200 pieces of counterfeit Chrome Hearts products for sale. Mr. Hall purchased a Chrome Hearts ring, and was

KLEMM, BLAIR,
STERLING & JOHNSON
A PROFESSIONAL CORPORATION
1008 PACIFIC NEWS BLDG
238 ARC-BISHOP
F.C. FLORES ST.
HAGÁTÑA, GUAM 96910
TELEPHONE 477-7857

13

provided a pouch bearing a Chrome Hearts logo with his purchase. (Hall Decl. ¶5.) The ring purchased from Maui Jewelry was examined by Mr. Tucker and determined to be counterfeit. (Tucker Decl. ¶11.)

On October 4, 2002, Mr. Hall entered Hawaiian Silver on the first floor of The Plaza next to the Outrigger Hotel in Tumon, and observed approximately 100 pieces of counterfeit Chrome Hearts products on display. Mr. Hall purchased a ring and was provided a pouch bearing the Chrome Hearts logo. (Hall Decl. ¶7.) The ring was later examined by Mr. Tucker and determined to be counterfeit. (Tucker Decl. ¶12.)

On October 4, 2002, Mr. Hall visited Hidy located on the second floor of the Micronesia Mall next to Macy's, and observed a small display containing less than 50 pieces of counterfeit Chrome Hearts products. Mr. Hall purchased a Chrome Hearts pendant and was provided a pouch displaying a Chrome Hearts logo with his purchase. (Hall Decl. ¶9.) The pendant was examined by Mr. Tucker and determined to be counterfeit. (Tucker Decl. ¶12.)

On October 7, 2002, Mr. Hall entered Aloha Jewelry II located on the second floor of The Plaza next to the Outrigger Hotel and observed approximately 100 pieces of Chrome Hearts branded products for sale. Mr. Hall purchased a Chrome Hearts branded pendant and was provided a pouch bearing a Chrome Hearts logo with the purchase. (Hall Decl. ¶11.) The pendant was later

KLEMM, BLAIR,
STERLING & JOHNSON
A PROFESSIONAL CORPORATION
1008 PACIFIC NEWS BLDG
238 ARCHBISHOP
F.C. FLORES ST.
HAGÁTÑA, GUAM 96910
TELEPHONE 477-7857

14

examined by Mr. Tucker and determined to be counterfeit. (Tucker Decl. ¶11.)

On October 7, 2002, Mr. Hall visited the Silver Deco at the Tumon Grand Plaza Hotel and observed approximately 50 pieces of Chrome Hearts branded products. Mr. Hall purchased a Chrome Hearts ring. (Hall Decl. ¶13.) The ring was later examined by Mr. Tucker and determined to be counterfeit. (Tucker Decl. ¶11.)

On January 14, 2003, Mr. Hall visited Accessory World on the second floor of Micronesia Mall in the north wing, and observed approximately 30 pieces of Chrome Hearts branded jewelry. Mr. Hall purchased a Chrome Hearts branded chain and pendant. (Hall Decl. ¶23.) The chain and pendant were later examined by Mr. Tucker and determined to be counterfeit. (Tucker Decl. ¶12.)

On January 14, 2003, Mr. Hall entered the Discount Shop at the Carlrose Building across from the PIC Hotel in Tumon, and observed approximately 50 pieces of Chrome Hearts branded jewelry for sale. Mr. Hall purchased a Chrome Hearts counterfeit dagger bracelet for $90. (Hall Decl. ¶25.) The dagger bracelet was later reviewed by Mr. Tucker and determined to be counterfeit. (Tucker Decl. ¶12.)

At the outset, it should be noted that none of the defendants are licensees of the Plaintiff nor are they in any way authorized to use the CHROME HEARTS Marks.

KLEMM, BLAIR,
STERLING & JOHNSON
A PROFESSIONAL CORPORATION
1008 PACIFIC NEWS BLDG
238 ARCHBISHOP
F.C. FLORES ST.
HAGÅTÑA, GUAM 96910
TELEPHONE 477-7857

Sometime in September 2002 it was brought to our attention that defendants were distributing and selling counterfeit CHROME HEARTS jewelry. My partner, Afschineh Latifi (hereinafter "Latifi"), who is intimately familiar with Plaintiff's product line, and investigator, Greg Hall ("Hall") in Guam, visited the stores of the various defendants in Guam and made buys from each store (See, ¶¶ 4 through 12 of Latifi Declaration and the Declaration of Greg Hall). Upon their visits to each of these stores, it was ascertained that all of the defendants were in fact selling counterfeit CHROME HEARTS-branded jewelry.

As previously stated, Mr. Tucker thoroughly inspected the items purchased by Ms. Latifi and Mr. Hall from the Defendants and, based upon his personal knowledge, states with certainty that each of the items purchased from the various Defendants is counterfeit. (Tucker Decl. ¶11.) Mr Tucker's determination was based upon the following facts:

The silver pendant purchased from Alma Silver Collection is counterfeit because: (1) the font for the markings "NYC" and "CHROME HEARTS" is incorrect; (2) the writing on the side is stamped rather than engraved as it is with a genuine piece; and, 3) the Star design on the front of the pendant is wrong (Tucker Decl. ¶11.)

The ring purchased from Hawaiian Silver bearing Plaintiff's copyrighted Dagger design is counterfeit because: (1) the

KLEMM, BLAIR,
STERLING & JOHNSON
A PROFESSIONAL CORPORATION
1008 PACIFIC NEWS BLDG
238 ARCHBISHOP
F.C. FLORES ST.
HAGÅTÑA, GUAM 96910
TELEPHONE 477-7857

16

engraving inside the ring is the wrong font; (2) the genuine ring has greater curve in its design; (3) the outside edges of the ring are not as sharp as the genuine ring; and, (4) the sides of the ring are shaved off (Tucker Decl. ¶11.)

The bracelet bearing Plaintiff's Dagger design purchased from Happy Happy Gift Shop is counterfeit because: (1) the fancy link detail has an extra ball on top of the elongated cross; (2) the casting lines are wrong on the Dagger design; (3) the wrong copyright notice is stamped on the back of the bracelet; (4) the closure tongue is too thick; and, (5) the sides of the plain link are too sharp (Tucker Decl. ¶11.)

The ring purchased from Aloha Jewelry is counterfeit because: (1) the font on the engraving is wrong; (2) it has the incorrect copyright notice; (3) the edge of the ring is incorrectly beveled; (4) the thickness of ring is wrong; and, (5) the outside design of the ring is not as sharp as the genuine ring (Tucker Decl. ¶11.)

I inspected a ring purchased from Maui Jewelers is counterfeit because: (1) the font on the inside of the ring is wrong; (2) the repeating design on the outside of the ring are separated rather than touching; and, (3) the curvature beveled edge on the side of the ring is wrong (Tucker Decl. ¶11.)

The ring purchased from Gallop USA is counterfeit because: (1) the Fleur de Lis design and size are wrong; (2) the Fleur de

KLEMM, BLAIR,
STERLING & JOHNSON
A PROFESSIONAL CORPORATION
1008 PACIFIC NEWS BLDG
238 ARCHBISHOP
F.C. FLORES ST.
HAGÅTÑA, GUAM 96910
TELEPHONE 477-7857

Lis on the genuine ring does not flow underneath the ring as does the ring purchased form Gallop USA; and, (3) the ring is too square (Tucker Decl. ¶11.)

The ring purchased from Silver Deco is counterfeit because: (1) the font on the inside is wrong; (2) the outside design of the ring is wrong; (3) the center ball is shaped wrong; and, (4) the shoulders of the ring are too straight. (Tucker Decl. ¶11.)

I have also inspected several other jewelry pieces purchased by Ms. Latifi and Mr. Hall from the Defendants and determined that they are counterfeit for one or more of the following reasons: (1) The dimensions of the jewelry are either too big or too small; (2) the quality of the jewelry is substandard; (3) the details of the jewelry designs are wrong; (4) the trademark engraving and markings on the jewelry are incorrect and in some cases blurred denoting a second or third generation copy; (5) the weight of the jewelry is too light; (6) the trademark is stamped rather than engraved; (7) the copyright date is incorrect; (8) the font used in connection with affixing the CHROME HEARTS trademark is wrong; (9) the design of the piece is not sharp, denoting that it is a second, third or greater generation copy; (10) the stone settings are incorrect; (11) the stones used are not genuine gem stones but cheap imitations; and, (12) the configuration of the design is inaccurate. (Tucker Decl. ¶12.)

KLEMM, BLAIR,
STERLING & JOHNSON
A PROFESSIONAL CORPORATION
1008 PACIFIC NEWS BLDG
238 ARCHBISHOP
F.C. FLORES ST.
HAGÅTÑA, GUAM 96910

All of the above-mentioned jewelry pieces purchased by me from the various defendants are in possession of Plaintiff's local counsel, Klemm, Blair, Sterling & Johnson, P.C., and are available for inspection by the Court should the Court so require.

I have further confirmed with Mr. Hall that Defendants have been continuously selling the counterfeit CHROME HEARTS-branded pieces from October, 2002, the earliest date of the background investigation he conducted, through January 14, 2003, the last date on which he purchased counterfeit jewelry from the defendants.[1] (Tucker Decl. ¶13.)

Defendants' counterfeiting activities and unfair competition have not only caused sales of Plaintiff's products to be lost and/or diverted to defendants, but have caused substantial and irreparable damage and injury to Plaintiff's name, goodwill and reputation. (Tucker Decl. ¶14.)

Upon information and belief, Defendants' use of the CHROME HEARTS Marks through, *inter alia*, the distribution and sale of inferior quality jewelry and accessories bearing the CHROME HEARTS Marks was willful, having been adopted with knowledge of Plaintiff's prior rights in and to the CHROME HEARTS Marks, with

---

[1] The only exception to this is Defendant Aesthetic Apparel, which was completely destroyed as a result of the Supertyphoon on December 8, 2002. (Hall Decl. ¶22.)

KLEMM, BLAIR,
STERLING & JOHNSON,
A PROFESSIONAL CORPORATION
1008 PACIFIC NEWS BLDG
238 ARCHBISHOP
F.C. FLORES ST.
HAGÅTÑA, GUAM 96910
TELEPHONE 477-7857

19

the intent to trade on and benefit from the goodwill established in the CHROME HEARTS Marks by Plaintiff.

### III.    ARGUMENT

#### A.    EX PARTE SEIZURE ORDER

##### 1.    Ex Parte Seizure Orders Are Typically Issued To Stop The Trafficking In Counterfeit Goods

The Trademark Counterfeiting Act of 1984 amended Section 34 of the Lanham Act, 15 U.S.C. § 1116, specifically to provide procedures for *ex parte* seizures of counterfeit goods. In so doing, Congress stated:

> The purpose of the ex parte seizure provision is to provide victims of trademark counterfeiting with a means of ensuring that the courts are able to exercise their jurisdiction effectively in counterfeiting cases. . . many of those who deal in counterfeits make it a practice to destroy or transfer counterfeit merchandise when a day in court is on the horizon. The ex parte seizure procedure is intended to thwart this bad faith tactic, while ensuring ample procedural protections for persons against whom such orders are issued.

Senate-House Joint Explanatory Statement on Trademark Counterfeiting Legislation, 130 Cong. Rec. H12076 at 12080 (Oct. 10, 1984).

As a result, courts around the country regularly issue *ex parte* seizure orders to prevent, as here, the further sale and distribution of counterfeit goods. *See*, <u>Fimab-Finanziaria Maglificio Biellese Fratelli Fila S.P.A. v. Helio Import/Export</u>, 601 F. Supp. 1, 2 (S. D. Fla. 1983) ("The weight of authority around the country appears to favor the granting of such *ex parte*

KLEMM, BLAIR,
STERLING & JOHNSON
A PROFESSIONAL CORPORATION
1008 PACIFIC NEWS BLDG
238 ARCHBISHOP
F.C. FLORES ST.
HAGÁTÑA, GUAM 96910
TELEPHONE 477-7857

20

Case 1:03-cv-00012    Document 3    Filed 04/15/2003    Page 24 of 37

seizures in trademark counterfeiting cases, where fake versions of well-known brands are deliberately passed off to the public as the genuine article"). *See also*, <u>In re Vuitton et Fils S.A.</u>, 606 F.2d 1, 4-5 (2d Cir. 1979); <u>In re Circuit Breaker Litig.</u>, 1997 WL 580570 at 2 (C.D. Cal. 1997); <u>Sega Enters. Ltd. v. MAPHIA</u>, 948 F. Supp. 923, 927 (N.D. Cal. 1996); <u>Hunting World Inc. v. Reboans Inc.</u>, 24 U.S.P.Q.2d 1844, 1845-7 (N.D. Cal. 1992).

    2.    **Chrome Hearts Has Satisfied the Requirements for an Ex Parte Seizure Order Pursuant to the Trademark Counterfeiting Act, 15 U.S.C. § 1116.**

Prior to issuing a seizure order under the U.S. Trademark Counterfeiting Act, the Court must find that:

(i)    the applicant is likely to succeed in showing that the person against whom seizure would be ordered used a counterfeit mark in connection with the sale, offering for sale, or distribution of goods or services;

(ii)    an immediate and irreparable injury will occur if such seizure is not ordered;

(iii)    the person against whom seizure would be ordered, or persons acting in concert with such person, would destroy, move, hide, or otherwise make such matter inaccessible to the court, if the applicant were to proceed on notice to such person;

KLEMM, BLAIR,
STERLING & JOHNSON
A PROFESSIONAL CORPORATION
1008 PACIFIC NEWS BLDG
238 ARCHBISHOP
F.C. FLORES ST.
HAGÅTÑA, GUAM 96910
TELEPHONE 477-7857

21

(iv)   an order other than an *ex parte* seizure order is not adequate to achieve the purposes of this Act;

(v)    the matter to be seized will be located at the place identified in the application; and

(vi)   the applicant has not publicized the requested seizure.

15 U.S.C. § 1116(d)(4).

In addition, Chrome Hearts must give the United States Attorney notice that it will be seeking an *ex parte* order of seizure, 15 U.S.C. § 1116 (d)(2), and must provide a bond deemed adequate by the Court, 15 U.S.C. § 1116(d)(4)(A). Chrome Hearts has satisfied all the requirements for an *ex parte* seizure and has a manifest need for such remedy in this case.

      **3.**   **Plaintiff is Likely to Succeed in Showing that Defendants Have Sold Counterfeit Chrome Hearts Jewelry and Accessories**

As described above and supported by the accompanying Declarations of Afschineh Latifi, Greg Hall and Robert L. Tucker, Plaintiff's investigations have positively demonstrated that Defendants have repeatedly used counterfeits of Chrome Hearts' federally registered trademarks, in connection with the sale of counterfeit jewelry and accessories.

Accordingly, Plaintiff is not merely likely to succeed in showing, but indeed has already established dispositively that Defendants have used counterfeits of the CHROME HEARTS Marks and that such counterfeiting, as intended by Defendants, is likely to

KLEMM, BLAIR,
STERLING & JOHNSON
A Professional Corporation
1008 PACIFIC NEWS BLDG
238 ARCHBISHOP
F.C. FLORES ST.
HAGÅTÑA, GUAM 96910

cause consumers to mistakenly believe that Defendants are selling authorized products.

### 4. Plaintiff Will Suffer Immediate and Irreparable Injury if Seizure is Not Ordered

The showing by Plaintiff of a likelihood of success on the merits in this case establishes, as a matter of law, that Plaintiff will be irreparably injured from continued counterfeiting. Home Box Office, Inc. v. Showtime/The Movie Channel Inc., 832 F.2d 1311, 1314 (2d Cir. 1987) ("[A] showing of likelihood of confusion as to source or sponsorship establishes the requisite likelihood of success on the merits as well as risk of irreparable harm").

Clearly, if Defendants' counterfeit goods are not seized, they will be sold and distributed to the public who will continue to be deceived, as Defendants have intended all along, into mistakenly believing that Defendants' products are authorized Chrome Hearts products.

Such continued counterfeiting of Plaintiff's CHROME HEARTS Marks, and resulting inevitable deception of the public, will continue to cause Plaintiff to lose control of Plaintiff's CHROME HEARTS Marks and its reputation symbolized by its marks, since Plaintiff cannot control Defendants' activities or the quality of Defendants' counterfeit products, thereby resulting in continued irreparable injury to Plaintiff. Vuitton v. White, 945 F.2d 569, 576 (3d Cir. 1991) (the potential damage to reputation and a

KLEMM, BLAIR,
STERLING & JOHNSON
A PROFESSIONAL CORPORATION
1008 PACIFIC NEWS BLDG
238 ARCHBISHOP
F.C. FLORES ST
HAGÅTÑA, GUAM 96910
TELEPHONE 477-7857

23

likelihood of confusion constitute irreparable injury, and this was expressly recognized by Congress when it enacted the Trademark Counterfeiting Act); <u>Power Test Petroleum Distrib. v. Calcu Gas, Inc.</u>, 754 F.2d 91, 95 (2d Cir. 1985) (irreparable injury exists when plaintiff establishes it will lose control over the reputation of its trademark); <u>Apple Computer, Inc. v. Formula Int'l. Inc.</u>, 725 F.2d 521, 526 (9th Cir. 1984); <u>Joy Mfg. Co. v. CGM Valve & Gauge Co., Inc.</u>, 730 F. Supp. 1387, 1394 (S.D. Tex. 1989) (a likelihood of confusion constitutes immediate and irreparable harm since the trademark owner is no longer able to control its own reputation and the goodwill associated with the mark and its products).

**5.    Defendants Will Likely Destroy, Move, Hide or Otherwise Make Inaccessible Their Counterfeit Products and Related Documents if Chrome Hearts Were to Proceed on Notice to Defendants**

"Consistent with their calling, professional counterfeiters and dealers in counterfeit goods generally are not upstanding citizens." <u>Vuitton</u>, 945 F.2d at 571. In fact, as one commentator described,

> "Experience in hundreds of cases has shown that it is extremely likely that a counterfeiter, upon being apprised of the institution of a lawsuit by the trademark owner, will conceal his infringing merchandise and either destroy or conceal all records relating to this merchandise, thereby frustrating implementation of the trademark owner's statutory, and common law rights."

KLEMM, BLAIR,
STERLING & JOHNSON
A PROFESSIONAL CORPORATION
1008 PACIFIC NEWS BLDG
238 ARCHBISHOP
F.C. FLORES ST.
HAGÅTÑA, GUAM 96910
TELEPHONE 477-7857

24

Bainton, "Seizure Orders: An Innovative Judicial Response to the Realities of Trademark Counterfeiting", 73 Trademark Rep. 459, 464 (1983).

The legislative history of the Trademark Counterfeiting Act, 15 U.S.C. § 1116, also indicates that Congress considers "*ex parte* seizures [as] a necessary tool to thwart the bad faith efforts of fly by night defendants to evade the jurisdiction of the court." Senate-House Joint Explanatory Statement on Trademark Counterfeiting Legislation, 130 Cong. Rec. H12076 at 12081 (Oct. 10, 1984). *See also*, In re Vuitton, 606 F.2d at 4-5; Reebok Int'l Ltd. v. Marnatech Enters., Inc., 737 F. Supp. 1521 (S.D. Cal. 1989), *aff'd*, 970 F.2d 552 (9th Cir. 1992). Plaintiffs may meet the exception to the notice requirement by showing that Defendants "would have disregarded a direct court order and disposed of the goods within the time it would take for a hearing. First Technology Safety Sys., Inc. v. Depinet, 11 F3d 641 (6th Cir. 1993) "This may be shown with evidence of a defendant's history of violating court orders or destroying evidence, such as in the case of a member of a counterfeiting ring who, if given notice, would simply transfer his inventory to another member of the ring." In re Vuitton, 606 F.2d at 4-5.

Here, Defendants are plainly engaged in the counterfeiting of Plaintiff's CHROME HEARTS Marks. Furthermore, there is an extremely high probability that Defendants will move and/or

KLEMM, BLAIR,
STERLING & JOHNSON
A PROFESSIONAL CORPORATION
1008 PACIFIC NEWS BLDG
238 ARCHBISHOP
F.C. FLORES ST.
HAGÅTÑA, GUAM 96910
TELEPHONE 477-7857

25

destroy evidence unless seized. Consistent with the "common practice in the counterfeiting industry" -- by now well established through "[e]xperience in hundreds of cases" and recognized by Congress, Defendants will likely destroy, move, hide or otherwise make inaccessible their counterfeit products and related documents if Plaintiff were to proceed on notice, rather than engage in an *ex parte* seizure.

### 6. An Order Other Than an Ex Parte Seizure Order is Not Adequate in this Case

As explained above, Defendants have taken clear measures to use Plaintiff's CHROME HEARTS Marks intentionally to benefit from Chrome Hearts' reputation and goodwill. Absent an *ex parte* seizure order, as noted above, Defendants will simply continue to sell their inventory of counterfeit Chrome Hearts products, and will destroy or hide documents relating to the manufacture and sale of such counterfeit products.

Clearly, an *ex parte* seizure of Defendants' counterfeit products and related instrumentalities is the only relief adequate to prevent further distribution of such counterfeit products. An *ex parte* seizure of any existing related documents is critical to enable Plaintiff possibly to ascertain the full nature and scope of Defendants' counterfeiting activities and identity of other entities involved in this fraud in order to seek to prevent their continued counterfeiting scheme and the

KLEMM, BLAIR,
STERLING & JOHNSON
A PROFESSIONAL CORPORATION
1008 PACIFIC NEWS BLDG
238 ARCHBISHOP
F.C. FLORES ST.
HAGÅTÑA, GUAM 96910
TELEPHONE 477-7857

26

resulting deception of the public and irreparable injury to Plaintiff.

### 7. Defendants' Counterfeit Products Will Be Seized in the Areas Identified in Plaintiff's Ex Parte Application.

Defendants' various operations are located in the territory of Guam. In its Ex Parte Application and proposed Order of Seizure, Plaintiff has identified these specific locations, and therefore has demonstrated, as required, that Defendants' counterfeit goods and related materials and records, upon order of the Court, will be seized at the areas identified in Plaintiff's present *Ex Parte* Application (and other appropriate locations uncovered during the seizure as provided in the Application and proposed Order).

### 8. Plaintiff Has Not Publicized the Present Application for Seizure

Plaintiff has not publicized the present Ex Parte Application for an Order of Seizure (Martinez Decl. ¶4.)

### 9. Plaintiff Has Notified the U.S. Attorney as to the Requested Seizure and is Prepared to Post an Adequate Bond in this Case

As required by 15 U.S.C. § 1116 (d)(2), in April 2003, Plaintiff, through its counsel, gave notice to the United States Attorney for the District of Guam as to the presently requested seizure. (Martinez Decl. Ex. A.)

Moreover, Plaintiff is prepared to post a bond in an amount, which the Court considers sufficient in order to protect the Defendants in view of the requested seizure. *See*, 15 U.S.C. § 1116(d)(4)(A).

KLEMM, BLAIR, STERLING & JOHNSON
A PROFESSIONAL CORPORATION
1008 PACIFIC NEWS BLDG.
238 ARCHBISHOP
F.C. FLORES ST.
HAGÅTÑA, GUAM 96910
TELEPHONE 477-7857

27

The factors that must be established under Fed.R.Civ.P. 65 to obtain a temporary restraining order are the same as those required for preliminary injunctive relief. *See,* <u>Paisa, Inc. v. N & G Auto, Inc.</u>, 928 F. Supp. 1004, 1007 (C. D. Cal. 1996); <u>Dogloo, Inc. v. Doskocil Mfg. Co., Inc.</u>, 893 F. Supp. 911, 917 (C.D. Cal. 1995); *See also, William W. Schwarzer, A. Wallace Tashima & James M. Wagstaffe, Calif. Prac. Guide* § 13.43 (1995); 19 Fed. Proc., L. Ed. § 47:70 (1983).

In the Ninth Circuit, a preliminary injunction will be granted under Fed.R.Civ.P. 65 if the moving party can demonstrate (i) a likelihood of success on the merits and the possibility of irreparable injury, or (ii) the existence of serious questions on the merits and the balance of hardships tipping decidedly in the moving party's favor. <u>Ocean Garden, Inc. v. Marktrade Co., Inc.</u>, 953 F.2d 500, 506 (9th Cir. 1991); <u>Sega Enters. Ltd. v. MAPHIA</u>, 857 F. Supp. 679, 689 (N.D. Cal. 1994).

In addition, a temporary restraining order on an *ex parte* basis under Fed.R.Civ.P. 65(b) is appropriate for a brief duration in order to preserve the status quo and prevent irreparable harm. *See,* <u>In re Vuitton</u>, 606 F.2d at 3-5 (quoting <u>Granny Goose Foods, Inc. v. Teamsters</u>, 415 U.S. 423, 438-39 (1974)); <u>Am. Can Co. v. Mansukhani</u>, 742 F. 2d 314, 321-2 (7th Cir. 1984).

KLEMM, BLAIR,
STERLING & JOHNSON
A PROFESSIONAL CORPORATION
1008 PACIFIC NEWS BLDG
238 ARCHBISHOP
F.C. FLORES ST.
HAGÅTÑA, GUAM 96910
TELEPHONE 477-7857

These factors are substantially similar to the statutory requirements for an *ex parte* seizure order under 15 U.S.C. § 1116. Moreover, in trademark counterfeiting cases, *ex parte* restraining orders are particularly appropriate because traditional civil remedies have proved largely ineffectual; counterfeiters who are served with a civil summons to appear at a hearing on a preliminary injunction can disappear or quickly dispose of existing inventory. 3 J. McCarthy, Trademarks and Unfair Competition, §25.10 at 25-15 (4th ed. 1996); In re Vuitton, 606 F.2d at 2; In re Intermagnetics Am., Inc., 101 B.R. 191, 193 (C.D. Cal. 1989).

Plaintiff has established the elements required for both a preliminary injunction and a temporary restraining order, for example (i) that Plaintiff is in immediate danger of irreparable injury, (ii) that notice to Defendants will result in immediate irreparable injury, (iii) that Plaintiff is likely to show (and indeed has already demonstrated) success on the merits, (iv) that the public interest is served by a seizure, and (v) that any possible harm to Defendants as a result of the requested seizure is far outweighed by the continuing damage to Plaintiff and the public if the requested seizure is not granted.

Accordingly, in satisfying the requirements for an *ex parte* seizure, Plaintiff has also demonstrated that it is entitled to an *ex parte* temporary restraining order and a preliminary

KLEMM, BLAIR,
STERLING & JOHNSON
A PROFESSIONAL CORPORATION
1008 PACIFIC NEWS BLDG
238 ARCHBISHOP
F.C. FLORES ST
HAGÅTÑA, GUAM 96910
TELEPHONE 477-7857

29

injunction preventing Defendants' manufacturing, selling, offering for sale, advertising or promoting products bearing counterfeits of Plaintiff's CHROME HEARTS Marks.

**11.    Plaintiff is Entitled to Expedited Discovery and an Order Preserving Evidence**

Plaintiff requests expedited discovery so that it can promptly prosecute its trademark, copyright and unfair competition claims, and, if possible, more fully address the issues to be raised at the expected upcoming hearing on the Order to Show Cause Re Preliminary Injunction.

In fact, such expedited discovery is expressly authorized by the Trademark Counterfeiting Act:

> "In connection with a hearing under this paragraph, the court may make such orders modifying time limits for discovery under the Federal Rules of Civil Procedure as may be necessary to prevent the frustration of the purposes of such hearing."

15 U.S.C. § 1116 (d)(10)(B). *See,* In Re Circuit Breaker Litig., 1997 WL 580570 at *1; Hunting World Inc., 24 U.S.P.Q.2d at 1847, Twentieth Century Fox Film Corp. v. Mow Trading Corp., 749 F. Supp. 473, 475 (S.D.N.Y. 1990); Fimab-Finanziaria, 601 F. Supp. at 3.

Expedited discovery is also necessary in this case so that Plaintiff can quickly determine the quantities of counterfeit Chrome Hearts products that have been manufactured, sold and distributed, and which additional companies or persons have been involved in Defendants' counterfeiting activities. It is the

KLEMM, BLAIR,
STERLING & JOHNSON
A PROFESSIONAL CORPORATION
1008 PACIFIC NEWS BLDG
238 ARCHBISHOP
F.C. FLORES ST.
HAGÅTÑA, GUAM 96910
TELEPHONE 477-7857

30

Case 1:03-cv-00012    Document 3    Filed 04/15/2003    Page 34 of 37

nature of the Defendants that they keep the location and identity of the manufacturers secret.

Such expedited discovery is routinely granted in cases where defendants, as here, are using counterfeit trademarks to deceive the public. *See*, Sega Enters. Ltd. v. Accolade, Inc., 785 F. Supp. 1392, 1401 (N.D. Cal. 1992) (district court granted expedited discovery in connection with a motion for preliminary injunction based on trademark and copyright infringement claims); Twentieth Century Fox Film Corp., 749 F. Supp. at 475.

In the exercise of discretion to grant expedited discovery, courts have considered four factors: (1) irreparable injury, (2) some probability of success on the merits, (3) some connection between the expedited discovery and the avoidance of irreparable injury, and (4) some evidence that the injury that will result without expedited discovery looms greater than the injury that defendant will suffer if the expedited relief is granted. Twentieth Century Fox Film Corp., 749 F. Supp. at 475.

Clearly, Plaintiff has already demonstrated its irreparable injury and at least a likelihood (not merely "some probability") of success on the merits. An order expediting discovery will provide Plaintiff an opportunity to promptly discover the full nature and scope of the Defendants' counterfeiting activities, including the identity of others acting in concert with them, enabling Plaintiff to pursue and stop such counterfeiting,

KLEMM, BLAIR,
STERLING & JOHNSON
A PROFESSIONAL CORPORATION
1008 PACIFIC NEWS BLDG
238 ARCHBISHOP
F.C. FLORES ST.
HAGÅTÑA, GUAM 96910
TELEPHONE 477-7857

31

thereby protecting the public from continuing deception and avoiding continuing irreparable injury to Plaintiff.

Moreover, the requested expedited discovery will not pose a substantial hardship on the Defendants since Plaintiff will be seeking relevant documents and testimony that should be readily available to the Defendants. *See*, <u>Soler v. G&U, Inc.</u>, 86 F.R.D. 524 (S.D.N.Y. 1980) (expedited discovery ordered concerning information readily available to defendant). In any event, any possible inconvenience to these Defendants from such expedited discovery is insubstantial in comparison to the continuing irreparable injury faced by Plaintiff and deception to the public if Plaintiff is unable to promptly determine the nature and extent of the subject counterfeiting in order to quickly put an end to it.

Additionally, Plaintiff requests that this Court issue an order preserving evidence. As discussed above, such an order is not only appropriate, it is necessary in order to prevent Defendants from disposing of evidence related to their counterfeiting operations.

### 12. Good Cause Exists For Sealing The File Pending Hearing On The Order To Show Cause

Finally, Plaintiff requests that this Court seal the court files in this action upon pending hearing on the order to show cause. An order sealing the file is both appropriate and necessary in order to avoid Defendants removing or otherwise

KLEMM, BLAIR,
STERLING & JOHNSON
A PROFESSIONAL CORPORATION
1008 PACIFIC NEWS BLDG
238 ARCHBISHOP
F.C. FLORES ST.
HAGÅTÑA, GUAM 96910
TELEPHONE 477-7857

32

disposing of evidence prior to the seizure of same. <u>Paramount Pictures Corp. v. Doe</u>, 821 F. Supp. 82, 91 (E.D.N.Y. 1993).

### IV.    CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court grant the present Ex Parte Application for an Order of Seizure, a Temporary Restraining Order, an Order To Show Cause Re Preliminary Injunction, an Order For Expedited Discovery, an order preserving evidence, and an Order Sealing the Court Files pending hearing on the order to show cause.

**RESPECTFULLY SUBMITTED** this __14__ day of April, 2003.

**KLEMM, BLAIR, STERLING & JOHNSON**
A PROFESSIONAL CORPORATION


BY:_____
        **JEHAN'AD G. MARTINEZ**
        *Attorneys for Plaintiff Chrome Hearts, Inc.*

A62\09810-01
\\G:\Word97\OFFICE\WORDDOC\PLD\JGM\107-MEMO IN SUPP OF EX PARTE APP RE CHROME HEARTS.doc

KLEMM, BLAIR,
STERLING & JOHNSON
A Professional Corporation
1008 PACIFIC NEWS BLDG
236 ARCHBISHOP
F.C. FLORES ST.
HAGÅTÑA, GUAM 96910
Telephone 477-7857

33